UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

KEITH THOMPSON (#109223)                                   CIVIL ACTION

VERSUS

RICHARD L. STALDER, ET AL.                                 NO. 07-0203-RET-CN


**NOTICE**

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, February 3, 2010.

MAGISTRATE JUDGE CHRISTINE NOLAND

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**KEITH THOMPSON (#109223)**                                    **CIVIL ACTION**

**VERSUS**

**RICHARD L. STALDER, ET AL.**                                  **NO. 07-0203-RET-CN**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This matter comes before the Court on the plaintiff's Motion for Summary Judgment, rec.doc.no. 19.  This motion is opposed.  In addition, pursuant to Order dated December 15, 2009, rec.doc.no. 23, the Court advised the plaintiff that it was considering entry of summary judgment, sua sponte, in favor of the defendants, and to this end, directed the plaintiff to supplement his motion within fifteen (15) days, "so as to demonstrate, if he is able, that there exist disputed issues of material fact in this case or an adequate legal basis upon which to maintain his claim against the defendants herein."  The plaintiff has not responded to the Court's Order.

The pro se plaintiff, an inmate confined at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Secretary Richard L. Stalder and Warden N. Burl Cain.  The plaintiff complains that the 1991 repeal of La. R.S. 15:571.14 and the subsequent unilateral modification of the terms of his written agreement with prison officials violated the ex post facto clause and the impairment of contracts clause contained in Article I, Section 10 of the Louisiana and United States Constitutions.  Pursuant to Report and Recommendation dated January 15, 2009, approved by the District Judge on March 17, 2009, see rec.doc.nos. 17 and 18, the Court declined to

exercise supplemental jurisdiction over the plaintiff's state law claims and dismissed the plaintiff's claim for monetary damages against the defendants in their official capacities, leaving the plaintiff's claim for monetary damages against the defendants in their individual capacities, as well as his claim for injunctive relief.

In his motion for summary judgment, the plaintiff relies upon the pleadings, a Statement of Uncontested Facts, La. Act No. 299 (1986)(enacting La. R.S. 15:571.14), La. Act No. 99 (1987)(amending La. R.S. 15:571.14 to provide that once an inmate elects to receive double good time in lieu of incentive wages, he "shall not be deemed indigent as defined by the department except for the necessities of life and services required by law and regulations of the department"), La. Act No. 848 (1987)(amending La. R.S. 15:571.14 to provide that double good time is available only to inmates sentenced after July 1, 1982), Department Regulation No. 30-9B (dated September 5, 1988, relative to implementation of the double good time provisions of La. R.S. 15:571.14),a copy of the Double Good Time Option and Approval Form, Policy Memorandum No. 200-F2 (dated March 22, 1988, relative to denial of compensation to double good time inmates for work done on public service crews), a Memorandum dated November 4, 1997 (relative to amendments to Department Regulation Nos. B-09-003 and B-09-004), a Memorandum addressed to the Inmate Population dated August 8, 1996 (relative to "Canteen Accounts"), and Department Regulation No. B-09-004 (dated July 1, 1996, relative to services and supplies provided to indigent inmates).

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. The moving party bears the initial burden of showing the absence of a genuine issue

of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Supporting affidavits must set forth facts which would be admissible in evidence, and the nonmoving party is not required to respond to the motion until the movant has properly supported his motion with competent evidence. Id. Once the movant has carried his burden of proof, however, the nonmovant may not sit idly by and wait for trial. Page v. Delaune, 837 F.2d 233 (5th Cir. 1988). Rather, the burden then shifts to the nonmovant to show that the entry of summary judgment is inappropriate. Celotex Corp. v. Catrett, supra. Opposing responses must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). In addition, where the plaintiff has moved for summary judgment and the record developed on the plaintiff's motion reveals that the defendants may be entitled to summary judgment, the Court has discretion to grant summary judgment in favor of the defendants even though no formal motion has been filed. NL Industries, Inc. v. GHR Energy Corp., 940 F.2d 957 (5th Cir. 1991), cert. denied, 502 U.S. 1032, 112 S.Ct. 873, 116 L.Ed.2d 778 (1992); Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries Marine Corp., 932 F.2d 442 (5th Cir. 1991); Marriott Bros. v. Gage, 911 F.2d 1105 (5th Cir. 1990).

In his Complaint, the plaintiff alleges that in 1990, he executed a written document, in accordance with then-statutory authority set forth in La. R.S. 15:571.14, whereby he agreed to waive entitlement to incentive pay in order to receive double good time credit toward early release. At the time of execution of this document, Louisiana law provided, as did the signed written form, that "[i]nmates who receive increased good time under this Section shall not be deemed indigent as defined by the department, except for the necessities of life and services required by law and regulations of the department." (Emphasis

added).  The plaintiff asserts that, at the time of his written election, Regulation No. 30-9B of the Louisiana Department of Public Safety and Corrections included among "necessities of life" food, medical services, mail and legal services.  In addition, this Regulations provided, in accordance with then statutory law, that the plaintiff could lose up to thirty (30) days of accrued good time per month for disciplinary violations.  Notwithstanding, the Louisiana Legislature repealed La. R.S. 15:571.14 in 1991, and prison officials, over time, have modified prison regulations so that now the plaintiff is charged for mail and medical services.  In addition, pursuant to Act 980 of 1995, which amended la. R.S. 15:571.4, he is now subjected to a potential deprivation of up to 180 days of accrued good time per month for disciplinary violations.  As a result, the plaintiff has incurred a charged debt balance exceeding $4,000.00, and has been required to forfeit excessive amounts of good time.  He complains that, by these actions, the defendants have violated the ex post facto and impairment of contracts provisions of the United States Constitution.

## Ex Post Facto Clause

Initially, the Court finds that the referenced amendments and modifications do not violate the ex post facto clause of the United States Constitution.  In this regard, Article I, § 10 of the Constitution provides, in pertinent part, that "[n]o state shall ... pass any ex post facto law ...."  The United States Supreme Court, however, has long recognized that the constitutional prohibition against ex post facto laws applies only to criminal or penal statutes.  Calder v. Bull, 3 Dall. 386, 1 L.Ed. 648 (1798).  In Rogers v. Tennessee, 532 U.S. 451, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001), the Supreme Court quoted Calder in delineating the types of laws which may run afoul of the ex post facto

prohibition:

> 1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action.  2nd. Every law that aggravates a crime, or makes it greater than it was, when committed.  3rd. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.  4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender.

Rogers, supra (quoting Calder v. Bull, supra).  Thus, in order for a law to be considered ex post facto in application, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for such criminal conduct.  Lynce v. Mathis, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997), citing Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981).  Therefore, the ex post facto clause's prohibition extends only to a statute which, "punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with a crime of any defense available according to law at the time when the act was committed." Collins v. Youngblood, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990).  The paramount concern of the Constitution's ex post facto prohibition is that a person be given fair notice of a crime or of punishment for a crime prior to the crime being committed.  Weaver, supra.

Based upon the foregoing, the Court concludes that the plaintiff has no claim relative to any alleged violation of the ex post facto clause. First, his assertion that the defendants are now wrongly charging him for mail and medical services has no penal or criminal implications.  The plaintiff admittedly continues to receive double good time, and the

repealing of La. R.S. 15:571.14 and redefining of indigency has therefore resulted in only a monetary effect upon the plaintiff.  In other words, although the plaintiff now incurs expenses for mail and medical services, the referenced repeal and redefinition has not punished him for behavior which was not punishable when committed, has not increased the punishment for behavior which carried a lesser punishment before, and has not deprived him of any defenses which he previously had against punishable behavior.  Accordingly, there is no ex post facto implication resulting from this aspect of the repeal of La. R.S. 15:571.14 and the redefining of indigency.

Second, the plaintiff appears to complain that the statutory amendment of La. R.S. 15:571.4 in 1995, which increased the potential amount of lost good time credits for disciplinary violations from 30 days per month to 180 days per month, has resulted in his forfeiture of excessive amounts of good time for disciplinary violations.  This claim, however, is not properly before the Court.  Specifically, because the plaintiff prays in his Complaint for restoration of the excessively forfeited good time, his claim must be interpreted as seeking an earlier release from confinement and must, therefore, be first asserted in a habeas corpus proceeding pursuant to 28 U.S.C. § 2254.  See Clarke v. Stalder, 154 F.3d 186 (5th Cir. 1998), cert. denied, 525 U.S. 1151, 119 S.Ct. 1052, 143 L.Ed.2d 58 (1999).  In this regard, when a prisoner brings a claim that directly or indirectly challenges the length or constitutionality of his confinement, the claim must be pursued in a habeas corpus proceeding.  Serio v. Members of the Louisiana State Bd. of Pardons, 821 F.2d 1112, 1117 (5th Cir. 1987).  Accordingly, because the plaintiff complains herein of the forfeiture of good time credits which would have entitled him to earlier release, and seeks restoration

of such credits, his claim necessarily calls into question the duration of his confinement, and he must therefore first pursue this claim in a habeas corpus proceeding. See Beebe v. Phelps, 650 F.2d 774 (5th cir. 1981) ("a writ of habeas corpus is the proper federal remedy of a state prisoner seeking speedier release", i.e., seeking restoration of good time credits); Poullard v. Stalder, 2008 WL 4372898 (W.D. La. August 7, 2008).

Further, with regard to the plaintiff's claim for monetary damages for the alleged wrongful forfeiture of his good time credits, this claim is barred by the doctrine set forth in Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Under Heck, a prisoner's claim for monetary damages attributable to an alleged wrongful confinement is not cognizable in federal court if a judgment in favor of the plaintiff would necessarily imply the invalidity of such confinement. Heck v. Humphrey, supra. If so, the complaint must be dismissed unless the plaintiff can demonstrate that his confinement has already been invalidated or determined to be wrongful by a separate tribunal. Id. As stated in Heck:

> In order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Heck v. Humphrey, supra. In the present case, a determination that the plaintiff is entitled to monetary damages as a result of the alleged wrongful forfeiture of good time credits would necessarily imply that the good time should be restored and that the period of his confinement

should correspondingly be shortened.  Since the plaintiff has failed to allege that the forfeiture of his good time has been invalidated or called into question in a separate proceeding, his claim for monetary relief under § 1983 resulting from such forfeiture falls squarely within the holding of Heck v. Humphrey.  See Edwards v. Balisok, 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997)(applying Heck in case involving good time credits); Clarke v. Stalder, supra.  Accordingly, his cause of action for monetary damages under § 1983 arising out of the alleged wrongful forfeiture has not yet accrued and must be dismissed.  Boyd v. Biggers, 31 F.3d 279, 284 (5th Cir. 1994)("Dismissal of the § 1983 action under 28 U.S.C. § 1915(d) is appropriate, post-Heck, because the plaintiff's action has been shown to be legally frivolous").[1]

Impairment of Contracts Clause

---

[1]   In any event, even if the Court were to conclude that the issue is properly before it, the Court would likely find that the amendment to La. R.S. 15:571.4 to allow for forfeiture of up to 180 days of good time credits did not apply in an ex post facto manner to events occurring before amendment of the statute. Specifically, although the issue is not free from doubt, the Court would likely conclude that the amendment only operated to increase the potential punishment for future conduct, i.e., for future disciplinary violations; it did not, therefore, increase the plaintiff's punishment for his past criminal behavior or extend the length of his confinement in connection with his original sentence. See Simon v. Stalder, 2008 WL 4763512 (La. App. 1 $^{st}$ Cir., Oct. 31, 2008)(finding no ex post facto violation under state law in amendment of La. R.S. 15:571.4). See also, In re Ramirez, 39 Cal.3d 931, 705 P.2d 897 (Cal. 1985), cert. denied, Ramirez v. California, 476 U.S. 1152, 106 s.Ct. 2266, 90 L.Ed.2d 711 (1986)(finding no ex post facto violation where state law was changed to increase amount of good time which could be revoked for disciplinary violations); Poullard v. Stalder, 2008 WL 4372898 (W.D. La. August 7, 2008). As noted in Poullard, supra, the reported decisions in other cases which may potentially be utilized to argue the contrary position are distinguishable on multiple fronts. Cf., Lynce v. Mathis, supra; Weaver v. Graham, supra; Beebe v. Phelps, supra; Greenfield v. Scafati, 277 F.supp. 644 (Mass. 1967), affirmed, 390 U.S. 713, 88 S.Ct. 1409, 20 L.Ed.2d 250 (1968).

The plaintiff next complains that the repeal of La. R.S. 15:571.14, and the subsequent amendment of state statutes and regulations to cause him to be charged for indigent services and to forfeit excessive amounts of good time, has impaired the obligation of contracts in violation of the United States Constitution. In this regard Article 1, § 10 of the Constitution provides that "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts ...." In evaluating a claim that a state has violated the Contracts Clause, however, a Court must determine whether a change in state law has "operated as a substantial impairment of a contractual relationship." Energy Reserves Group, Inc. v. Kansas Power & Light Co., 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983); Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978). This inquiry has three components: (1) whether there is a contractual relationship; (2) whether a change in law impairs that contractual relationship; and (3) whether the impairment is substantial. General Motors Corp. v. Romein, 503 U.S. 181, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992). Where substantial impairment is found, the state must demonstrate a legitimate public purpose for the regulation, such as to remedy broad and general social or economic problems. See Energy Reserves, supra. In determining whether the State has operated a substantial impairment of a contractual relationship, "the court should consider the expectations of the parties with respect to changes in the law." Lipscomb v. Columbus Municipal Separate School District, 269 F.3d 494 (5th Cir. 2001), cert. denied, 535 U.S. 988, 122 S.Ct. 1541, 152 L.Ed.2d 467 (2002). The Court is also to "consider whether the industry the complaining party has entered has been regulated in the past," since "[o]ne whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about

them." Energy Reserves, supra.

Based upon the foregoing, the Court concludes that the action of the State in repealing La. R.S. 15:571.14, and in subsequently amending statutes and regulations as above indicated, has not violated the plaintiff's constitutional rights through the substantial impairment of its contractual obligations. In the first place, the Court does not accept the plaintiff's contention that the signed form on which he elected to earn double good time per month resulted in a contract between himself and the State of Louisiana. Rather, the election form amounted simply to his making of a formal choice between two alternatives allowed under Louisiana law, i.e., a choice between receiving incentive wages while earning fifteen (15) days per month of good time, or forgoing incentive wages in order to earn thirty (30) days of good time per month. Although the plaintiff's election was made on a signed written form, and although this election was "approved" by the Secretary of the Department, this did not convert the election form into a binding contract. See Lay v. Donnelly, 1990 WL 161064 (E.D. La., Oct. 11, 1990)(finding that the double good time election form "was not a contract"). See also Simon v. Stalder, 2008 WL 4763512 (La. App. 1st Cir. Oct. 31, 2008), citing Bancroft v. Department of Corrections, 635 So.2d 738 (La. App. 1st Cir. 1994)("[T]he rate option form ... has been held ... not to be a contract ...."). Accordingly, in the absence of a binding contract between the plaintiff and the State, there can be no contractual impairment within the meaning of Article I, § 10, of the United States Constitution.

Further, even were the plaintiff's election form viewed to be a binding contract, the Court would nonetheless conclude that the State's repeal of La. 15:571.14, and subsequent amendments, did not result in a "substantial" impairment of the contractual agreement. In fact, it does

not appear that there has been any real alteration in the basic terms of the agreement whereby the plaintiff elected to forgo incentive wages in exchange for double good time. The plaintiff continues to earn double good time in lieu of incentive wages, and although he complains that he is now being made to pay for certain services at the prison and that he has been made to forfeit excessive amounts of good time subsequent to the agreement, the form which he executed in order to make his election does not preclude such conduct. To the contrary, the referenced form stated only that, by signing the form, the plaintiff (1) understood that he would "not be deemed indigent <u>as defined by the department</u> except for the necessities of life and services required by law and regulations" (emphasis added), and (2) understood that he could "fail to earn good time through disciplinary actions". There is nothing in the form which either provided a definition of indigency or specified the amount of good time which the plaintiff could potentially lose per month for disciplinary violations. Accordingly, there is nothing in the form itself which disallowed the State from re-defining indigency or from specifying additional amounts of good time which could be lost for future disciplinary violations. The mere fact that indigency was defined a certain way by the Department at the time that the plaintiff executed the form and that thirty (30) days of good time per month was the maximum allowable forfeiture at that time did not result in a reasonable expectation on the plaintiff's part that these provisions, both subject to regulation by the State, were forever inviolate. Rather, the Court concludes that these provisions were neither essential nor integral parts of the plaintiff's agreement. Accordingly, because the core purpose of the plaintiff's election -- which the Court finds to have been the receipt of double good time -- was and has been honored, the agreement

between the plaintiff and the State has not been substantially altered or impaired.  For this reason, the Court finds no violation of the Contracts Clause of the United States Constitution.[2]

Finally, the plaintiff also seeks to invoke the supplemental jurisdiction of this court.  District courts, however, may decline to exercise supplemental jurisdiction over a plaintiff's state law claims if the claims raise novel or complex issues of state law, if the claims substantially predominate over the claims over which the district court has original jurisdiction, if the district court has dismissed all claims over which it had original jurisdiction, or for other compelling reasons.  28 U.S.C. § 1367.  In the instant case, having recommended that the plaintiff's federal claims be dismissed as frivolous, the Court concludes that it is appropriate for the Court decline to exercise supplemental jurisdiction over the plaintiff's state law claims.

RECOMMENDATION

It is recommended that the Court decline to exercise supplemental jurisdiction, that the plaintiff's Motion for Summary Judgment, rec.doc.no. 19, be denied, and that summary judgment be granted <u>sua</u>

---

[2] The Court further notes that, pursuant to Department regulations, it appears that the plaintiff is in fact receiving the indigent services which were previously provided to him at no cost; he is now merely being assessed a fee which is placed against his account for payment when and if he is able.

sponte in favor of the defendants and against the plaintiff, dismissing the plaintiff's action, without prejudice to any state law claims which the plaintiff may have.

    Signed in chambers in Baton Rouge, Louisiana, February 3, 2010.

                                                 **MAGISTRATE JUDGE CHRISTINE NOLAND**